1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11  RUBEN TONY CERVANTES,                    )   Case No.: 1:20-cv-00188-NONE-JLT (HC)
                                             )
12            Petitioner,                    )   FINDINGS AND RECOMMENDATION TO
                                             )   DENY PETITION FOR WRIT OF HABEAS
13       v.                                  )   CORPUS
                                             )
14  W.J. SULLIVAN, Warden,                   )   [THIRTY-DAY OBJECTION DEADLINE]
                                             )
15            Respondent.                    )
                                             )
16  _____ )

17          Petitioner was convicted by jury trial of attempted deliberate and premeditated murder. He

18  filed the instant habeas petition challenging the conviction. As discussed below, the Court finds the

19  Petitioner's claim to be without merit and recommends the petition be **DENIED**.

20  **I.       PROCEDURAL HISTORY**

21          Petitioner was convicted of two counts of attempted deliberate and premeditated murder (Pen.

22  Code, §§ 664/189; counts 1 & 2) and one count of infliction of corporal injury to a spouse (§ 273.5,

23  subd. (a); count 4). People v. Cervantes, 2018 Cal. App. Unpub. LEXIS 6460, at *2 (Cal. App. 5th

24  Dist. September 18, 2018). As to count 1, the jury found true he personally discharged a firearm (§

25  12022.53, subd. (d)) and personally inflicted great bodily injury under circumstances of domestic

26  violence (§ 12022.7, subd. (e)). Id. As to count 4, the jury found true he personally used a firearm (§

27  12022.5, subd. (a)) and personally inflicted great bodily injury under circumstances involving

28  domestic violence (§ 12022.7, subd. (e)). Id. Petitioner waived trial by jury on several alleged priors,

and the court found them true as alleged. Id.

As to count 1, the court sentenced Petitioner to a term of 14 years to life, plus a consecutive term of 25 years to life for the section 12022.53, subdivision (d) enhancement. Id. The court stayed the sentence for the section 12022.7, subdivision (e) enhancement. Id. As to count 2, the court sentenced Petitioner to a consecutive term of 14 years to life. Id. The court imposed two five-year terms for a section 667, subdivision (a) prior (counts 1 & 2) and struck two section 667.5, subdivision (b) priors. Id. As to count 4, the court sentenced Petitioner to a term of eight years, plus a 10-year section 12022.5, subdivision (a) enhancement and a five-year section 12022.7, subdivision (e) enhancement. Id. The sentence on count 4 was stayed. Id. Petitioner's total prison sentence was two consecutive terms of 14 years to life, with a consecutive term of 25 years to life for the firearm enhancement attached to count 1 and two consecutive five-year terms for the section 667, subdivision (a) priors. Id. at *2-3.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA remanded for the limited purpose of giving the trial court discretion whether to strike the firearm enhancement and in all other respects affirmed the judgment. Id. at *1. Petitioner filed a petition for review in the California Supreme Court, which was denied. (Docs. 17-32, 17-33.) Petitioner filed the instant habeas petition on February 6, 2020. (Doc. 1.) In response to an order by this Court, the Respondent filed an answer on September 4, 2020. (Doc. 18.)

## II.   FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

> Appellant had been dating M.W. for three to four months, and they lived together. They argued often. She became pregnant with his child about two months into their relationship. When M.W. informed appellant she was pregnant, he told her to get an abortion and to drink bleach.
>
> Approximately seven to 10 days later, on May 29, 2013, at approximately 5:50 a.m., law enforcement was alerted to a victim with a gunshot wound at appellant and M.W.'s residence. M.W. had been shot in the face. When law enforcement arrived, M.W.'s pillow and bed were saturated with blood, and her three-year-old son was found lying

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).  Therefore, the Court will adopt the Fifth DCA's summary of the facts.  Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

in the bed. There were blood hand marks on the walls throughout the hallway leading from the bedroom, where M.W. was found by law enforcement.

The neighbor who lived in the house directly behind appellant and M.W. called 911 and said that appellant was banging on their back door and had a gun. Appellant was found shortly after in the bedroom of another neighbor's home. He informed law enforcement that the gun was in the dresser, which is where the gun was ultimately found.

When detectives later interviewed appellant, he admitted to shooting M.W. He stated he should have just left and he made a big "mistake." He stated that normally when M.W. is arguing with him, he tries to deal with her and keep his composure. When one of the detectives asked him if he kept his composure during the incident, he replied, "I kept it for a little while." When a detective asked him why he did not seem upset, he replied that he had only been dating M.W. for four months.

The bullet entered the left side of M.W.'s face, fracturing multiple facial bones. She had several injuries to the main blood vessel that supplies the brain on the left side and suffered a stroke. There was a high risk of death to both M.W. and the fetus. She and the baby ultimately survived.

Appellant's defense was that he was high on methamphetamine at the time of the incident, which affected his decision-making processes.

People v. Cervantes, 2018 Cal. App. Unpub. LEXIS 6460, at *3-4.

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Cullen v. Pinholster, 563 U.S. 170, 203 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."

1  | _Jeffries_, 114 F.3d at 1500; see _Taylor v. Maddox_, 366 F.3d 992, 999-1001 (9th Cir. 2004), _cert.denied_,

2  | _Maddox v. Taylor_, 543 U.S. 1038 (2004).

3  | To determine whether habeas relief is available under § 2254(d), the federal court looks to the

4  | last reasoned state court decision as the basis of the state court's decision.  See _Ylst v. Nunnemaker_,

5  | 501 U.S. 979, 803 (1991); _Robinson v. Ignacio_, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we

6  | independently review the record, we still defer to the state court's ultimate decisions."  _Pirtle v._

7  | _Morgan_, 313 F.3d 1160, 1167 (9th Cir. 2002).

8  | The prejudicial impact of any constitutional error is assessed by asking whether the error had

9  | "a substantial and injurious effect or influence in determining the jury's verdict." _Brecht v._

10 | _Abrahamson_, 507 U.S. 619, 623 (1993); see also _Fry v. Pliler_, 551 U.S. 112, 119-120 (2007) (holding

11 | that the _Brecht_ standard applies whether or not the state court recognized the error and reviewed it for

12 | harmlessness).

13 |    C.    Review of Petition

14 |    1.    Sufficiency of the Evidence

15 | The one claim for relief the petition presents is that there was insufficient evidence of

16 | premeditation and deliberation. (Doc. 1 at 6.) Petitioner raised this claim on direct appeal. In the last

17 | reasoned decision, the Fifth DCA denied the claims as follows:

18 |    Appellant contends the evidence at trial was insufficient to sustain a true finding on the
19 |    allegation that the attempted murder of M.W. was deliberate and premeditated. We
    |    reject this contention.

20 |    
21 |    In assessing a claim of insufficiency of the evidence, we review "the whole record in
    |    the light most favorable to the judgment below to determine whether it discloses
22 |    substantial evidence—that is, evidence that is reasonable, credible and of solid value—
    |    from which a reasonable trier of fact could find the defendant guilty beyond a reasonable
23 |    doubt." (_People v. Snow_ (2003) 30 Cal.4th 43, 66.) Substantial evidence encompasses
    |    circumstantial evidence and reasonable inferences based on that evidence. (_People v._
24 |    _Pierce_ (1979) 24 Cal.3d 199, 210.) "Although it is the duty of the jury to acquit a
    |    defendant if it finds that circumstantial evidence is susceptible of two interpretations,
25 |    one of which suggests guilt and the other innocence [citations], it is the jury, not the
    |    appellate court which must be convinced of the defendant's guilt beyond a reasonable
26 |    doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of
    |    the reviewing court that the circumstances might also be reasonably reconciled with a
27 |    contrary finding does not warrant a reversal of the judgment."'" (_People v. Bean_ (1988)
28 |    46 Cal.3d 919, 932-933.) "'"Circumstantial evidence may be sufficient to connect a

5

defendant with the crime and to prove his guilt beyond a reasonable doubt.'"' (*People v. Thomas* (1992) 2 Cal.4th 489, 514 (*Thomas*).)

"Attempted murder requires (1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing. [Citation.] ... [U]nlike murder, attempted murder is not divided into degrees. The prosecution, though, can seek a special finding that the attempted murder was willful, deliberate, and premeditated, for purposes of a sentencing enhancement." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.)

"'[P]remeditation means "'considered beforehand'" [citation] and deliberation means a "'careful weighing of considerations in forming a course of action ...'" [Citation.] "The process of premeditation and deliberation does not require any extended period of time."'" (*People v. Salazar* (2016) 63 Cal.4th 214, 245.) "'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly....'" (*People v. Mayfield* (1997) 14 Cal.4th 668, 767, overruled on other grounds in *People v. Scott* (2015) 61 Cal.4th 363.) Ultimately, a finding of deliberation and premeditation requires the existence of "preexisting reflection, of any duration." (*People v. Solomon* (2010) 49 Cal.4th 792, 813.)

In evaluating whether sufficient evidence supports a jury finding that an attempted murder was deliberate and premeditated, we employ the same analysis that we use to resolve an insufficiency challenge to a first degree murder conviction: the three-pronged "*Anderson* test." (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27 (*Anderson*); *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8 ["We do not distinguish between attempted murder and completed first degree murder for purposes of determining whether there is sufficient evidence of premeditation and deliberation."], disapproved on other grounds in *People v. Mesa* (2012) 54 Cal.4th 191, 199.)

*Anderson* delineates three categories of evidence for reviewing courts to consider in evaluating whether a murder (or attempted murder) was committed with premeditation and deliberation: "(1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of a 'pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (*Anderson, supra*, 70 Cal.2d at pp. 26-27.)

A verdict of premeditation and deliberation will typically be upheld when "there is evidence of all three types." (*Anderson, supra*, 70 Cal.2d at p. 27.) Alternatively, a

verdict will be sustained when "there is extremely strong evidence of planning; or evidence of motive in conjunction with either (a) evidence of planning or (b) evidence of a manner of killing showing a preconceived design." (*People v. Brito* (1991) 232 Cal.App.3d 316, 323.) "*Anderson* does not require that these factors be present in some special combination or that they be accorded a particular weight, nor is the list exhaustive. *Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse." (*People v. Pride* (1992) 3 Cal.4th 195, 247.)

We find that there is some of all three types of evidence in this case with the strongest type being motive. There is evidence that appellant had motive to kill both M.W. and the fetus. A week to 10 days before appellant shot M.W., he told her to get an abortion and suggested that she do so by drinking bleach. This is more evidence than was required to find substantial evidence for motive in *People v. Disa* (2016) 1 Cal.App.5th 654, 665-666, where the defendant killed his girlfriend by using a chokehold, and the appellate court found evidence of motive from the facts that he was jealous over her new relationship, angry that she was trying to kick him out of his own house and insulting him, and depression over the apparent ending of their relationship. In contrast, we do not have to infer from appellant's negative emotions toward M.W. that he may have planned to kill her and the fetus. We have evidence before us of his *express* desire for the fetus to cease existing. In addition, the suggestion that M.W. abort the fetus in a violent manner such as by drinking bleach rather than obtain a safe surgical abortion demonstrates not only maliciousness toward the fetus but an implied desire for M.W. to die or at least to be harmed. These comments are strong evidence of a preexisting reflection.

The manner of the attempted killing also supports a finding of premeditation and deliberation, particularly when considered in conjunction with appellant's motive. The method of the killing alone can sometimes support a conclusion that the murder was deliberate and premeditated. (*People v. Hawkins* (1995) 10 Cal.4th 920, 957, overruled on other grounds by *People v. Blakeley* (2000) 23 Cal.4th 82.) Appellant does not cite, nor have we found, any cases that reversed a finding of premeditation and deliberation when the manner of killing was a gunshot at close range to the face. Rather, cases have held that a close-range shooting without provocation or evidence of a struggle provides evidence of premeditation and deliberation. (*People v. Marks* (2003) 31 Cal.4th 197, 230.) In *People v. Adcox* (1988) 47 Cal.3d 207, our Supreme Court found "a single fatal shot to the back of the head of the unarmed victim from a distance of six to ten feet as he kneeled, baiting his fishhook" was evidence that the shooting was planned in advance. (*Id.* at p. 240.) In *People v. Cruz* (1980) 26 Cal.3d 233, the court concluded that the victim's killing, perpetrated by blows to only the head and by a shotgun blast in the victim's face "permit[ted] the jury to infer that the manner of killing was so particular and exacting that defendant must have killed intentionally according to a preconceived design and for a reason." (*Id.* at p. 245, overruled on other grounds by *People v. Hudec* (1985) 167 Cal.App.3d 550.) In these cases, there was little to no independent evidence of planning or motive.

7

Appellant shot M.W. once in the face while she was in bed. He targeted a vital area of M.W.'s body, her head, and under most circumstances this would have been sufficient to kill her. From this, the jury could have inferred he did not randomly or impulsively shoot in her direction. There was no evidence that appellant shot from another room in the house, permitting the reasonable inference that he was in the bedroom with M.W. and fired from a close range. Although appellant and M.W. stated that they had an argument the day of the shooting, there is no evidence that it was of a nature that could have by itself provoked the murder. There was evidence that they frequently fought, with appellant stating they fought every day. There is no evidence M.W. was armed or that she struggled. The head of the bed and the pillow were saturated with blood. M.W. was in a vulnerable position, with her three-year-old child present or at least nearby. The manner of the attempted killing here, combined with the motive evidence, suggests it was considered by appellant beforehand.

The record contains less evidence of planning than the other two types because M.W. was unable to recall and appellant did not provide details on what happened in the moments leading up to the shooting. However, as we have discussed, the case law establishes a premeditation and deliberation finding can be upheld based only on manner and motive evidence, and in some cases, on manner evidence alone. Here, though there is not a great deal of planning evidence, there is some. Appellant armed himself with a firearm. Appellant argues there is no evidence that he armed himself for the purpose of committing the crime because he was in his own home, which is where he most likely kept the firearm. We, however, must accept logical inferences the jury might have drawn from the evidence. (*People v. Brady* (2010) 50 Cal.4th 547, 561.) The inference the jury likely drew from the fact appellant was in his own home is that he was not walking around armed and that he would have had to take some action to retrieve the weapon from either somewhere in the bedroom or another room. The incident occurred a little before six in the morning and M.W. was in bed. Planning can be inferred where a weapon is not readily accessible at an hour when activity would not normally be taking place. (*Thomas, supra*, 2 Cal.4th at pp. 517-518.) As we have discussed, no specific passage of time is required for a finding of premeditation and deliberation. It can happen quickly, so long as the act is reflected upon.

Although the evidence is not overwhelming, the relevant inquiry on appeal is whether "'*any* rational trier of fact'" could have been persuaded beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576, quoting from *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) Appellant's motive of ridding himself of his girlfriend carrying his unwanted baby; the manner of the killing—a single shot to the face of M.W.; and the steps appellant took to arm himself support the jury's finding of premeditation and deliberation.

People v. Cervantes, 2018 Cal. App. Unpub. LEXIS 6460, *4-13.

       *a.*    *Legal Standard*

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307

(1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Id. at 326.  Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson,

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

   *b.*     *Analysis*

Viewing the evidence in the light most favorable to the prosecution, the state court's

determination that there was sufficient evidence was not unreasonable. The state court discussed that there are three categories of evidence for reviewing courts to consider in evaluating whether a murder (or attempted murder) was committed with premeditation and deliberation, and found that there is some of all three types of evidence in this case with the strongest type being motive. People v. Cervantes, 2018 Cal. App. Unpub. LEXIS 6460, *7-9. As to motive, the state court observed that a week to 10 days before Petitioner shot M.W., he told her to get an abortion and suggested that she do so by drinking bleach, providing evidence "of his *express* desire for the fetus to cease existing." Id. at *9 (emphasis in original). The court reasoned, "the suggestion that M.W. abort the fetus in a violent manner such as by drinking bleach rather than obtain a safe surgical abortion demonstrates not only maliciousness toward the fetus but an implied desire for M.W. to die or at least to be harmed. These comments are strong evidence of a preexisting reflection." Id.

Next, the Fifth DCA found that "[t]he manner of the attempted killing also supports a finding of premeditation and deliberation, particularly when considered in conjunction with [Petitioner's] motive." Id. at *9-10. The state court discussed that Petitioner "shot M.W. once in the face while she was in bed. He targeted a vital area of M.W.'s body, her head, and under most circumstances this would have been sufficient to kill her." Id. at *11. The state court reasoned that from this, the jury could have inferred that he did not randomly or impulsively shoot in her direction. Id. Additionally, the state court observed that there was no evidence M.W. was armed or that she struggled, and the head of the bed and the pillow were saturated with blood; M.W. was in a vulnerable position, with her three-year-old child present or at least nearby. Id.

Finally, as for planning, the Fifth DCA determined that "though there is not a great deal of planning evidence, there is some." Id. at *12. Specifically, Petitioner armed himself with a firearm while in his own home. Id. The state court discussed that Petitioner was in his own home, he was not walking around armed and he would have had to take some action to retrieve the weapon from either somewhere in the bedroom or another room. Id. The state court further observed that the incident occurred a little before six in the morning and M.W. was in bed, and planning can be inferred where a weapon is not readily accessible at an hour when activity would not normally be taking place. Id. at *12-13.

The Fifth DCA reasonably concluded that Petitioner's motive of ridding himself of his girlfriend carrying his unwanted baby, the manner of the killing—a single shot to the face of M.W., and the steps Petitioner took to arm himself support the jury's finding of premeditation and deliberation. Petitioner fails to show that no fair-minded jurist would agree with the state court's determination. Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, the <u>Jackson</u> standard, and the claim should be denied.

## IV.    RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy of this Findings and Recommendation, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __**November 9, 2020**__              _____**/s/ Jennifer L. Thurston**
                                                             UNITED STATES MAGISTRATE JUDGE

11